Good morning all. Our first case this morning is Ariel Investments v. Ariel Capital. Mr. Bray. Good morning, Your Honors. May it please the Court, Your Honors, my name is Christopher Bray. I'm up here from the other end of the country, South Florida, to represent the appellate defendant, Ariel Capital Advisors. The case before you isn't that difficult. It's very not complicated at all, actually. It just is really centered around this idea of personal jurisdiction and the authority of a forum state to exercise personal jurisdiction over a non-resident defendant. And actually, for the last 75 years, the constitutional test for personal jurisdiction has not changed. From International Shoe to Hanson v. Denkla, Denkla Worldwide, Volkswagen, and Burger King v. Residuits. The Due Process Clause of the 14th Amendment of the United States Constitution, quote, does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. And, Your Honors, the appellate defendant in this case is a small business in Naples, Florida. The appellant has never had any sales in Illinois, never had any clients in Illinois, never had an office in Illinois, never had an agent in Illinois, never had any property in Illinois, never had any transactions in Illinois, was never even in Illinois at any time but for the purposes of defending itself in three years of litigation. And to be honest, Your Honors, this actually, I don't want to spend much more of your time because this is not that difficult. This is just pretty straightforward. There's a lot of other issues, but these are the most important ones. And there's no place in the record, and I defy anyone, any reasonable person who's not a party to the case to find any place in the record where there is any contact whatsoever between the appellant and the state of Illinois. With that, I'd like to reserve the five minutes of my time for rebuttal, and I'll yield. All right. Thank you, Mr. Brady. Mr. Galwitzer? Good morning, Your Honors. May it please the Court. Arthur Galwitzer on behalf of Ariel Investments. The District Court correctly found there is personal jurisdiction in this case for at least two reasons. One, the District Court found that Ariel Investments made its prima facie showing that there is personal jurisdiction here. And two, Ariel Capital incorrectly argues that it was entitled to an evidentiary hearing. So let's start with the first point. Ariel Capital just argued there were no contacts with the state of Illinois, but this is trademark infringement. This is an intentional tort. What does that have to do with jurisdiction? Your Honor, in Calder v. Jones, the Supreme Court held or established the effects test as a way of evaluating whether there is specific jurisdiction. I think what you really need to be discussing is Walden v. Fiore. Very good, Your Honor. In which the Supreme Court held that knowing where the effects will be felt doesn't create jurisdiction in the area where the effects are felt. As Ariel Capital just pointed out, the law hasn't changed. Walden stressed that fortuitous or random or attenuated contacts... It wasn't fortuitous or random. It was deliberate. That was the holding of the Court of Appeals in Walden that the defendant well knew exactly where the harm would occur and intended it. And the Supreme Court said that's not enough. The defendant has to act in the forum. Walden also reaffirmed Calder v. Jones. In Walden... I wish you would discuss Walden and not earlier cases. Yes, sir. But in Walden, the Court explained how those facts were different from Calder v. Jones without overruling Calder. In Walden, the Supreme Court said distinguished causing reputational injury. A trademark case is about reputational injury, unlike what happened in Walden. But counsel, even in Calder v. Jones, there was more than just the reputational injury. I mean, there were the calls to California. The sources were in California. The National Enquirer's largest circulation was in California. There was more than just the reputational harm. It seems to me that our post-Walden v. Fiore case in advanced tactical ordinance systems kind of shuts down this argument. Could you talk about that case? Yes, Your Honor. In advanced tactical, the facts were different as well. Advanced tactical dealt with a different species of trademark infringement. Advanced tactical dealt with a defendant who made allegedly misleading statements about its own product on its website. So this court correctly held that in light of Walden, to hail that defendant into court in Indiana, where the plaintiff was located, was the kind of random or attenuated contact, the lack of meaningful contact that the Supreme Court said was not enough in Walden. Advanced tactical did not involve the reputational harm that is at risk or in place when you misappropriate a name. So within the Lanham Act, there's different species of trademark infringement. There is misappropriation of a name under Section 32, under Section 43A1A, and then there's misleading statements about a product under 43A1B, which is what you had in advanced tactical. It's a different case. The defendant did not reach out to an Indiana plaintiff and misappropriate its name, subjecting that plaintiff to the risk of reputational harm. Walden, if I go back to Judge Easterbrook's point about Walden, there were a couple of critical quotes from the Supreme Court that tied together Calder and Walden. In Walden, the court said, quote, the crux of Calder was the reputation-based effects of the alleged libel, and that's what connected the defendant to California. The Walden court said the strength of that connection was largely a function of the nature of the libel tort. And finally, the court said the defendant's intentional tort actually occurred in California. Again, that's what Walden said about Calder. So in light of that, they're both good law. And as this court has observed in the past in trademark cases, the most corrosive harm in a trademark case, again, the kind where you're taking the other side's name, is that the mark holder, the senior mark holder, loses the ability to protect its reputation, to protect its goods and services. The potential damage to goodwill, that reputation-based impact, is akin to the libel that was addressed in Calder and frankly reaffirmed in Walden. Is your allegation that the reputational harm was felt primarily in Illinois? Because isn't your client a national firm? Our client is a national firm, but it is based here. And the reputational effects would absolutely be based here. In the same way that in Calder v. Jones, the defendant was, I believe, a celebrity whose business was centered in Hollywood. Aerial Investments is a major financial firm based in Chicago, one of the financial centers of the country. So the reputational-based harm that could occur in this kind of trademark case absolutely would be felt here. And as Walden said, the tort essentially occurred in California in Calder v. Jones. So this tort, based on the fact findings of the district court, occurred here in Illinois. That's the contact. Turning to those facts, in light of Calder and Walden and Advanced Tactical, there's no dispute about the key facts here. The district court found that Aerial Capital ran a Google search for the term Aerial, found a company called Aerial Wealth Advisors, wasn't sure if he found anyone else, but district court found that the defendant had been in this business for over 20 years, that Mr. Bray had seen John Rogers, the founder of Aerial Investments, in TV interviews, that he had received emails from Aerial Investments, that he had attended conferences sponsored by Aerial Investments, that he had read periodicals in which Aerial Investments advertised prominently. Based on those undisputed facts, there's no dispute about those things. The district court concluded that it was highly likely, this is a quote, highly likely Bray came across Aerial Investments' name and presence in the investment advisory field on repeated occasions during his 20-plus years working in that same field. The district court went on to say that Mr. Bray's claim to the contrary was not credible. Quote, evidence provides reason to doubt Bray's claim that he was ignorant of Aerial Investments' prior and extensive use of the term. Personal jurisdiction, your honors, is all about fairness, and when a defendant misappropriates the name of another party and subjects them to those reputation-based effects, they should reasonably anticipate being hailed into court in that forum. That is fair. Now, I can also turn to the question of an evidentiary hearing. The Aerial Capital responds to all of this by arguing that it was entitled to a hearing, but the district court correctly decided that it was not, and that decision was right for at least six reasons. Number one, as I just explained, the material facts here aren't in dispute. The law is that a party contesting personal jurisdiction may be entitled to a hearing if there's disputed facts. There aren't any disputed facts here. There's a fight over what inference to draw from them, but the district court can do that. Second, this court held in Phylos that where the district court needs to assess credibility, it can do one of two things. First, it can either allow cross-examination or allow pre-hearing discovery. In this case, Judge Kennelly allowed pre-hearing discovery, and the fact that Aerial Capital didn't take advantage of it doesn't mean the district court made a mistake. It means Aerial Capital is to blame. In fact, in Phylos, this court said that the failure to take advantage was not the district court's fault and casts no cloud over the district court's handling of the matter. Third, even if there was a right to an evidentiary hearing, Aerial Capital forfeited that right. This is a right that can be forfeited like most any other. Aerial Capital sat on its rights until it learned that it didn't like the district court's decision and then said, wait, we'd like an evidentiary hearing. That's a forfeiture. Fourth, Aerial Capital can't show any prejudice. Aerial Capital has never pointed out, even in its briefs to this court, what facts would have been adduced at such a hearing that would have changed the outcome, because the facts aren't in dispute. Fifth, we had a trial in this case. If anything, the trial was a hearing, and the evidence at trial confirmed, by a preponderance of the evidence, the standard, exactly the same things that Judge Connelly found in denying the motion to dismiss. When Mr. Bray was on the stand, he conceded the same points, that he ran the search for Aerial, that he found Aerial Wealth Advisors, that he had 20 years of experience in the industry, that he attended our conferences and all those things. So the district court concluded, quote, contrary to Bray's contention, he knew of Aerial Investments prior to founding Aerial Capital Advisors and was aware that he was adopting a name similar to the one Aerial Investments already using in the same general field. And the court further said that the question of personal jurisdiction, quote, did not present a close question in this court's view. Mr. Kollwitzer, can we go back to jurisdiction for a second? You said there are no facts in dispute. So do you accept Mr. Bray's representation of the record as to the extent of his involvement, not his knowledge of Aerial? Do you accept what he said in his opening comments? For the most part, but it was a little oversimplified, I can explain. The Aerial Capital's website states that it does business throughout the United States. Mr. Bray testified that expanding his business was an option. And Mr. Bray, while running a predecessor firm, different name, essentially the predecessor in interest to Aerial Capital, spoke at at least one conference in the state of Illinois. We haven't emphasized those. Those facts are far less important than the intentional tort here. Well, I'd like you to focus, if you would, on a line I find from Walden challenging. Walden, in quoting Calder, says, as the forum state the, quote, focal point of the alleged conduct and the harm suffered. Could you point to me where the district judge found this to be the focal point of the alleged conduct? The district court found that Mr. Bray knowingly misappropriated our name, was not inflicting harm or potential reputational harm in Aerial Investments' home. Specifically, the court pointed out, as a matter of policy, the law ought not require a holder of intellectual property to go to the home forum of one who has, in effect, reached into the holder's home forum to take its property. So Judge Kennelly found, based on the undisputed facts- Of course, that sounds like an argument for amending the statute to authorize nationwide service of process, as the securities laws do and the antitrust laws and RECA. But that's not the way the Lanham Act works. Why would one rely on a district judge's view of wise policy to override a legislative decision not to authorize nationwide service? We're not asking this court to do that, Your Honor. So why are you relying on that? That seemed to be the core of the district judge's opinion. But it really is just an argument for a statutory amendment. Two things, Your Honor. First, respectfully, in response to Judge Fulm's question, was pointing out where the district court made a factual finding and an inference about the contacts between Ariel Capital and Illinois. As to the legal argument and what the statute allows, again, the difference is that in this species of trademark infringement, unlike in advanced tactical, we have misappropriation of a name, which directly threatens the reputation of Ariel Investments, which is exactly the kind of intentional tort that the Supreme Court in Calder, as reaffirmed in Walden, said, in essence, takes place in the forum of the company whose reputation is threatened. That's the law from the Supreme Court. That is enough. So we're not asking for a change in the law. If anything, if the court needs to differentiate between this case and cases like advanced tactical, we respectfully submit that the difference is in the different species of trademark infringement. One where you knowingly take the name of the plaintiff, and the other where you just make misleading statements about your own products and services that just so happen to impact someone else, which is what you had in advanced tactical. But isn't that what you're arguing, that the harm to you was felt where your business was located? That's absolutely our argument, but the difference is how do we get there? And in this case, the defendant knowingly took our name. That's not what happened in advanced tactical. In advanced tactical, the defendant made a statement on its website about the source of its paintballs, where it was getting them. It didn't say anything about the plaintiff. So when the plaintiff sued the defendant in Indiana, this court ultimately concluded that in light of Walden, there weren't enough contacts with Indiana. Here, based on the factual findings of the district court, and facts that aren't in dispute, Judge Cannelli determined that Mr. Bray and Ariel Capital knew about Ariel Investments when he chose the name Ariel. He did that intentionally, and that kind of infringement, that misappropriation of a name is what makes, again in the words of Walden, makes it as though the tort itself took place in Illinois. Your Honor, we're approaching the end of my time. I can address the issue of the jury trial and the cost if the court would like. As far as the jury trial goes, there is no Seventh Amendment right to a jury trial when all the plaintiff is seeking is a permanent injunction and disgorgement of profits. Even if the court disagreed with the Ninth Circuit and said that disgorgement of profits was a legal remedy, there is no error or prejudice here because the district court didn't award any profits. As for costs, the district court has wide discretion in awarding costs. We start with a review of the statutory authority. Under Rule 54, there's a strong presumption in favor of awarding costs to the prevailing party. There is no doubt that Ariel Investments was the prevailing party here. It prevailed on all four counts that went to trial. It obtained a permanent injunction, which is a substantial change in the legal relationship of the parties. So the district court went on to award costs. In this case, the cost of copying electronic records under Section 1920, sub 4, consistent with the Third Circuit's decision in race tires where it outlined that the cost of scanning was essentially making electronic duplicates and the cost of converting electronic records to what are known as TIFF files to make it so human beings can put their eyes on them are analogous to copying. That was all within the district court's discretion. It's consistent with the Third Circuit's ruling. This court hasn't spoken in depth on the issue, but the other circuits have either followed the Third Circuit or even expanded on it. So the award of costs in this case was within the district court's discretion. Thank you. Thank you. Mr. Bray? Thank you. Thank you again, Your Honors. I'm not sure this is relevant, but just for context, the name of the firm was named not after any type of investment firm. It was named after my little girl, and her name is Ariel. Ariel is not a mermaid, and it's not a turtle. It's a 5,000-year-old Hebrew word that means line of God. Having said that, after my three years of extensive review of personal jurisdiction jurisprudence in the Seventh Circuit and the United States, I am still scratching my head and cannot figure out why this district court was hell-bent not to relinquish jurisdiction in this matter, despite all facts the contrary. And I don't know if I'll ever know, but I'll just, again, rest that argument for you to decide. With regard to costs, I would just say this. There's a little family in South Florida with $100,000 of its savings tied up in an escrow account. The sooner you can get this figured out, the better for us. Thank you. Thank you, Mr. Bray. Thanks to all counsel. The case is taken under advisory.